UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JEAN CORRIOLAN,

                             Petitioner,

              — against —

WILLIAM PHILLIPS, SUPERINTENDENT

                             Respondent.
-----------------------------------------------------------X

**MEMORANDUM and ORDER**

04-CV-5476 (SLT)(LB)

**TOWNES, United States District Judge:**

*Pro se* petitioner Jean Corriolan ("petitioner" or "Corriolan") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. He challenges his Kings County conviction for Robbery in the First Degree. (Pet. at ¶¶ 1-5).

Petitioner alleges that his due process rights were violated because: (1) the State failed to establish petitioner's guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence, because there was no reliable evidence as to petitioner's identification; (2) the prosecutor exceeded the boundaries of fair comment and argument when he vouched for the credibility of his witnesses during summation; and (3) the cumulative effect of errors committed by the trial court and the prosecutor deprived petitioner of a fair trial.

For the reasons set forth below, the petition is DENIED.

## BACKGROUND

### I. Statement of Facts

In September 1999, at approximately 5:00 p.m., Eugene Gerovich stood in the reception area of the Brooklyn medical office he managed when Konstantin Popov, another manager, arrived. (Tr. 172-76, 188-89, 202-04, 240-42). Popov, who was carrying a bag of payroll

1

checks, walked down a hallway toward the back office, followed by two men and then Gerovich. (Tr. 175-76, 204-07, 242, 255, 263-65, 272). Ilya Kravetsky, an employee of the medical office sat in the office with his one year old son. (Tr. 178, 243, 260, 280, 301-02). As Popov reached the back office, one of the two men attempted to grab at the payroll checks he was carrying. (Tr. 176-78, 188-90, 208-09, 242, 255). Popov turned and faced the man, later identified as petitioner, who was standing two to three feet away from him. (Tr. 242, 259-60). Popov testified that he saw the petitioner's face for approximately ten seconds and noted that he had a scar on his cheek, a short haircut, and "big lips, big nose." (Tr. 260). Petitioner wore sneakers, a dark blue shirt, a dark jacket or sweatshirt, and he wore a hood over his head. (Tr. 209, 213, 215, 252, 260, 269). Popov was unable to describe the other male. (Tr. 272-73).

While Popov wrestled with the petitioner for the bag, petitioner hit Popov in the face with his fist. (Tr. 178, 243, 260, 280, 301-02). Popov fell down, while still holding the bag. (Tr. 178, 244, 266). Petitioner and the second man repeatedly punched Popov in the face, demanding that he give them the bag, and one of them struck Popov with a "shotgun." (Tr. 178-79, 212, 283, 246-47, 254). Popov released the bag, and petitioner grabbed it, turned around and ran. (Tr. 179, 181, 283). Both men ran past Gerovich to the exit. (Tr. 181, 219, 247, 283).

Approximately ten seconds after they had run out of the hallway, Popov got up and ran in pursuit, immediately followed by Gerovich and Kravetsky. (Tr. 181-82, 220-21, 247, 266). Gerovich and Popov both testified that they saw the petitioner, still holding Popov's bag, run to the right while his accomplice ran to the left carrying the shotgun. (Tr. 182-83, 223, 247, 267).

Popov, followed by Gerovich, Kravetsky, and approximately three patients, chased petitioner who was carrying the bag down Foster Avenue to 21st Street. (Tr. 183-84, 222, 248,

284-85, 300). As the petitioner turned the corner onto 21st Street, Gerovich lost sight of him for one second and Kravetsky lost sight of him for three to five seconds. (Tr. 185, 224, 287, 295-96). Each saw him again running down 21st Street. (Tr. 185, 295). Popov testified that he was never more than ten to twenty feet behind petitioner and he never lost sight of him. (Tr. 247, 252). As petitioner reached the middle of the block, a group of about twenty people stood in front of a building. (Tr. 184-85, 226, 249, 258, 270). When Popov and one of the patients from the medical office yelled "get him," some of the bystanders grabbed petitioner and held him on the ground. (Tr. 185-86, 201, 226, 250, 254, 287). He was still holding onto Popov's bag and Popov took it from him. (Tr. 185-86, 250, 252, 274-75). The bag still contained the office's payroll checks. (Tr. 275).

The group held the petitioner until the police arrived. (Tr. 185, 199, 251, 258, 188). Police officer Christopher Poturcia ("Poturcia") was flagged down by one of the bystanders at around 5:10 p.m. (Tr. 312-13, 318-20). He observed a crowd of about twenty to thirty people surrounding the petitioner, but he did not see anyone in the crowd hitting him. (Tr. 313-14, 320-21). When he arrested petitioner, he noted that petitioner had a scar on his face and was wearing a black hooded sweat-suit and sneakers. (Tr. 314, 317, 321, 323-24).

**The Defense Case**

At the close of the State's case, petitioner moved to dismiss the case on the ground that the State failed to put forth a "prima facie case." (Tr. 328-29). The trial court replied: "As far as I can see, unless there is something specific that you want to point out to me, each of the counts – there is prima facie case as to each count." (Tr. 329). Defense counsel did not reply.

The defense presented the testimony of Kathia Boisrond, Corriolan's acquaintance. She testified that on the day of the robbery she stood on her porch and witnessed a crowd of at least ten people hitting the petitioner as he lay on the ground but she observed that petitioner was not holding a bag. (Tr. 337-38, 347-49, 372, 374.) Someone in the crowd told her that a robbery had occurred, so she explained to the 911 operator that petitioner did not deserve to be beaten even if he had stolen something. (Tr. 386-87, 350-51, 372-73, 387).

After the defense rested, petitioner's counsel moved to dismiss the case on the ground that the State did not prove the "charges beyond a reasonable doubt." (Tr. 389). The trial court denied the motion. (*Id.*)

**Conviction and Sentence**

On July 11, 2000, the jury convicted petitioner of first degree robbery and, on September 6, 2000, he was sentenced to a term of imprisonment of twelve years. Pet. at ¶ 2.

## II. Post-Conviction Proceedings

Corriolan appealed his conviction to the New York Supreme Court, Appellate Division, Second Department, on April 30, 2002. Through counsel, he argued that "the [State] failed to establish appellant's guilt beyond a reasonable doubt, **and** the verdict was against the weight of the evidence, because there was no reliable evidence as to appellant's identification." Respondent's Ex. B (Br. for Defendant-Appellant at 2) (emphasis supplied). Corriolan reasoned that the State's witnesses had only briefly observed the two perpetrators, provided general descriptions and their version of the chase following the robbery was contradicted by the observations of Kathia Boisrond. He argued that because there was no reliable evidence as to his identification, the State had failed to establish his guilt beyond a reasonable doubt.

4

"Alternatively," petitioner argued that his conviction should be reversed as against the weight of the evidence. (Respondent's Ex. B, Part 1 (Brief for Defendant-Appellant at 13)).

Corriolan, *pro se*, filed a supplemental brief in which he presented two additional arguments. First, referencing seven comments made by the prosecutor, he argued that the prosecutor exceeded the boundaries of fair comment and argument by vouching for the credibility and truthfulness of his witnesses during the State's summation. Second, petitioner urged that the cumulative effect of various errors committed by the trial court- posing questions to witnesses- and by the prosecutor, deprived petitioner of his right to a fair trial and due process of law.

In a decision dated June 9, 2003, petitioner's conviction was affirmed. *People v. Corriolan*, 760 N.Y.S.2d 670 (2d Dep't 2003). The Appellate Division, citing N.Y. C.P.L.R. § 470.05(2), wrote that Corriolan's "contention that the evidence was legally insufficient to support the conviction, because the identification testimony by the eyewitnesses was unreliable, is unpreserved for appellate review because he did not raise it at the trial level." *Id.* The Appellate Division continued, "*[i]n any event*, ... we find that it [the evidence] was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Id.* Moreover, the Court noted "that the verdict of guilt was not against the weight of the evidence." *Id.*

The court held that petitioner's "remaining contentions, raised in his *pro se* supplemental brief, that the prosecutor made numerous improper remarks during summation, and that the trial court improperly interjected itself into the proceedings, are unpreserved for appellate review ..., and, in any event, are without merit." Thus, the Appellate Division held that all of the

5

defendant's claims, other than the weight of the evidence claim, were unpreserved for appellate review.

By Order dated October 30, 2003, the Court of Appeals denied petitioner's application for leave to appeal. *People v. Corriolan*, 100 N.Y.2d 641 (N.Y. 2003).

## *Habeas* Petition

On December 16, 2004, petitioner filed this petition seeking a writ of habeas corpus. In support of his petition, Corriolan makes the same arguments he brought to the Appellate Division's attention during his direct appeal.

## **DISCUSSION**

### A.     Federal Habeas Corpus Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### I.     Review of Procedurally Defaulted Claims

#### *a.     Legal Sufficiency Claim*

For his first claim, Corriolan argues that the evidence was legally insufficient to prove his guilt beyond a reasonable doubt because identification testimony presented was not reliable. The Appellate Division explicitly held that Corriolan's contention concerning legal sufficiency was

6

unpreserved for appellate review. In so finding, the court relied on New York's contemporaneous objection rule which requires that the defendant raise his contention at the trial level in order to preserve the claim for appellate review. N.Y. Crim. P. Law § 470.05(2).

A state court's expressed reliance on a procedural bar preventing adjudication on the merits of a claim generally constitutes an independent and adequate state law ground for the state court's judgment precluding federal review. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed. 2d 640 (1991). The contemporaneous objection rule is an adequate and independent state ground barring review of the merits of the claim by this Court. *See Garcia v. Lewis*, 188 F.3d 71, 78-79 (2d Cir. 1999); *Wainwright v. Sykes*, 433 U.S. 72, 86, 90 (1977); *Velsquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

Under New York law, there are two ways a question of law can be preserved for appeal. New York's contemporaneous objection rule, N.Y. Crim. P. Law § 470.05(2), requires that an objection be lodged at the time of the ruling or "at any subsequent time when the court had an opportunity of effectively changing the same ... [and] is sufficient if the party made his position with respect to the ruling or instruction known to the court." *Id.*; *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007). By its terms, New York's contemporaneous objection rule does not seem to require specificity regarding the form of objections or relief sought. However, New York courts have consistently construed the rule to require defendants to "specifically focus on the alleged error." *Garvey*, 485 F.3d at 714; *People v. Parsons,* 30 A.D.3d 1071, 816 N.Y.S.2d 271, 271 (4th Dep't 2006) ("Defendant failed to preserve for our review his further contention that the evidence is legally insufficient ... inasmuch as his motion to dismiss was not specifically directed at that alleged insufficiency."); *People v. Gray*, 86 N.Y.2d 10, 19 (1995)(New York's

highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error.)

Corriolan made two general motions for dismissal, arguing only that the People "failed to put forth a prima facie case" (Tr. 328-29) and that the "People failed to prove these charges beyond a reasonable doubt." (Tr. 389). Corriolan's general objection did not alert the court to defendant's position with respect to the legal sufficiency of the identification testimony. The Appellate Division correctly applied the contemporaneous objection rule by barring review of Petitioner's legal sufficiency claim because he did not raise a specific objection at the trial level. Moreover, Corriolan's trial counsel did not direct his motion to dismiss, or any other objection, specifically to the legal insufficiency of the evidence of robbery in the first degree.

Notwithstanding these restrictions, there are circumstances in which a federal claim disposed of by a state procedural rule may be reviewed on a federal petition for habeas corpus. A court may review a procedurally defaulted claim if appellant can show "cause for the default, and actual prejudice as a result of the alleged violation of federal law...." *Coleman*, 501 U.S. at 750.

To establish cause, a petitioner must show that the cause was "something external to the petitioner, something that cannot fairly be attributed to him .... For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel, ... or that 'some interference by officials ... made compliance impracticable, would constitute cause under this standard." *Id.* at 753 (internal quotations and citations omitted). A petitioner shows prejudice by demonstrating that the alleged error worked to his "actual and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Secondly, if a petitioner cannot show cause and prejudice, his procedural default may be excused if he can demonstrate that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits because "he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

Third, a procedural rule can fail to be a state ground "adequate" to protect a judgment from federal collateral attack when it is applied in an exorbitant manner. This limited category of cases "in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question" permits federal review. *Lee v. Kenna*, 534 U.S. 362, 376, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002) (citation omitted). Whether or not a procedural rule is adequate to prevent a federal court from reaching the merits of a claim "is determined with reference to the 'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.'" *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (*quoting Lee*, 534 U.S. at 387).

Petitioner does not attempt to demonstrate cause for failing to properly preserve the legal sufficiency claim for appellate review. Similarly, Petitioner has failed to demonstrate prejudice as a result of any alleged violation of federal law. The legal insufficiency standard applies when "reasonable people could not find the defendant guilty on the state of [the] record." *See Santucci v. Kohn*, 138 A.D.2d 603, 605 (1998); 34 N.Y. Jur. 2d Criminal Law § 2425. Given the extensive eyewitness testimony presented at trial, a reasonable person could find the defendant guilty based on the evidence. Therefore, no prejudice has been shown. Lastly, petitioner has not

9

attempted to -nor, in the Court's opinion could he, establish that the Appellate Division applied the contemporaneous objection rule in an exorbitant manner or, that he is actually innocent.

### b. *Weight of the Evidence Claim Does Not Raise a Federal Question*

To the degree that petitioner claims that his guilt was not proven beyond a reasonable doubt, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of robber in the first degree beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). It is obvious here that petitioner has failed to meet his burden. The evidence, when viewed to the prosecution, is overwhelming. To the degree petitioner claims the verdict was against the weight of the evidence, such a claim does not present a federal constitutional issue. *See Lemons v. Parrott*, No. 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[A federal court] has no authority to review a weight of the evidence argument because it is a state law claim."); *Correa v. Duncan*, 172 F.Supp. 2d 378, 381 (E.D.N.Y. 2001); *Peralta v. Bintz*, No. 00 Civ. 8935, 2001 WL 800071, at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his petition must be denied.").

### c. *Prosecutorial Misconduct*

Petitioner claims that certain remarks made by the prosecutor during his summation deprived him of a fair trial. His challenge to the prosecutor's summation is procedurally barred from federal review because the Appellate Division explicitly held that defendant's contentions

concerning the summation were unpreserved for appellate review. The State properly notes that following each of the seven comments cited by the petitioner, the defendant either lodged no objection, failed to state the ground for his objection, or acquiesced to the court's response to the objection. Moreover, the defendant did not move for a mistrial on the ground of individual or cumulative summation error, and his claim is not preserved for review.

The claim itself is, nonetheless, without merit. "A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant." *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981) (citations omitted). "To determine whether a prosecutor's summation caused 'substantial prejudice,' the Second Circuit has established a three-factor test considering (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements." *Moore v. Warden,* 380 F.Supp. 2d 321, 330 (S.D.N.Y. 2005).

As to the first component, the Second Circuit has ruled that, "where the defense summation makes arguments and allegations against the government, the prosecutor may respond to them in rebuttal." *United States v. Tocco,* 135 F.3d 116, 130 (2d Cir. 1998); *see also United States v. Rivera,* 971 F.2d 876, 883 (2d Cir. 1992) ("The prosecutor's remarks were legitimate responses to [Defense] counsel's arguments that [Petitioner] had ... been framed by the cooperating witnesses and the government."); *Modica,* 663 F.2d at 1181 ("Among the elements weighed in this inquiry are the extent to which the misconduct was intentional and the extent to which the statements were made in response to defense contentions."). Turning to the comments at issue in the instant case, a review of the record reveals that, during summation, defense counsel repeatedly attacked the government's evidence, including calling into question the

11

veracity of the prosecution's eyewitnesses. For example, Petitioner's counsel argued that: "[These] are the inconsistencies in the testimony that you got to concern yourself about" and that the jury should "be very weary of how [this] testimony comes about" given that "the three of them were in the district attorney's office discussing their testimony together." (Tr. 399). The prosecutor responded to these arguments in his closing, arguing that the inconsistencies in the testimony are hallmarks of truth and reliability and that if there was collusion between the witnesses, they would have done a better job of telling the story. (Tr. 423, 425). Clearly, any references to the credibility of the prosecution's witnesses were made in response to defense counsel's suggestions that the eyewitness testimony was inconsistent, fabricated and unreliable. *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (the prosecutor is entitled to comment on the credibility of witnesses with reference to the evidence in the case, particularly where credibility has been challenged by the defense.); *United States v. Arboleda*, 20 F.3d 58, 61 (2d Cir. 1994) (Another purpose of summation is to suggest what inference the jury should draw from the evidence presented.).

Furthermore, the court adopted sufficient measures to correct the alleged misconduct of the prosecution. Throughout the prosecution's summation, the trial judge reminded the jury that the prosecution was making arguments that they could either accept or reject. For example, defense counsel objected to the prosecution's argument in summation that the inconsistencies in the testimony go to show truth in the testimony.

In addition, the judge's jury charge clearly stated that the jury "was not bound to accept the arguments of counsel," and to "disregard answers of witnesses which were strickened out." (Tr. 447-48). The judge instructed the jury that "under our law, a defendant is presumed to be

12

innocent"and that "the People must establish every element of the crime that the defendant is charged with to your satisfaction, and beyond a reasonable doubt." (Tr. 455). Instructions such as these have been held to cure any possible prejudice to a defendant. *Rivera,* 971 F.2d at 884 (no prejudice where trial judge gave instruction that government always has the burden of proof which "never shifts," despite prosecutor's implication that Defense Counsel, during cross-examination of a police officer, should have elicited certain testimony supporting defendant's claim).

Finally, the case against Petitioner was strong. The prosecution presented three eyewitnesses who were all present at the scene of the crime and who saw the robber at close range. The witnesses followed the fleeing robber out of the building and did not lose sight of him for more than a few seconds before he was captured. Petitioner matched the eyewitnesses' description of the robber. Under these circumstances, petitioner has failed to allege prosecutorial misconduct. *See, e.g., Modica,* 663 F.2d at 1182 (no prosecutorial misconduct where prosecutor made improper comments, trial court failed to cure and "trial record strongly indicates that the jury would have convicted [defendant] even if the improper statements had not been made" where, *inter alia,* defendant's explanation was "implausible and refuted"); *United States v. Parker,* 903 F.2d 91, 98 (2d Cir. 1990) ("Even where the prosecutor's argument was clearly impermissible, we have been reluctant to reverse where the transgression was isolated, the trial court took swift and clear steps to correct the implication ... and the evidence against the defendant was strong."). Petitioner's claim of prosecutorial misconduct is, therefore, without merit.

### d.     *Trial Court Error*

Petitioner's final claim that the trial court's interference with proceedings deprived him of the right to a fair trial is also procedurally barred from habeas review. The Appellate Division explicitly held that defendant's claim that the trial court improperly interjected itself into the proceedings was unpreserved for appellate review. Because the court relied on an independent and adequate state procedural ground in rejecting the claim, this court will not review it. *See Harris v. Reed*, 489 U.S. 255 (1989).

In addition, petitioner has not been able to show cause for the default and prejudice as a result of the alleged violation. It is true that "the greater the Trial Judge's penchant for participation in the questioning of witnesses, the more difficult will it be for counsel to register objection to the trial court's conduct for fear of antagonizing him." *People v. Yut Wai Tom*, 53 N.Y.2d 44, 55 (N.Y. 1981). Further, it is conceivable that in an extreme form, the Judge's conduct may excuse Petitioner's failure to make a proper objection. *See id.* at 59 (Trial Judge asked more than 1,300 questions during the course of the trial and solicited direct examination of the witnesses). However, there is no indication from the record that such a situation was present here. Therefore, Petitioner's failure to make an appropriate objection must preclude review of this claim because Petitioner has not been able to show cause for the default.

Moreover, the instances of alleged judicial error cited by the Petitioner did not prejudice him. A court may question witnesses in order to clarify testimony and facilitate the proceedings. *See People v. Jones*, 242 A.D.2d 542, 543 (2d Dep't 1997). Here, the trial court's intervention during the trial was appropriate because it was limited to clarifying testimony and expediting the admission and use of exhibits. *See People v. Arnold*, 98 N.Y.2d 63, 67 (2002). Furthermore, the court properly instructed the jury to draw no inference from its rulings and actions. *See People*

*v. Man Xing Guo*, 271 A.D.2d 700 (2d Dep't 2000) (any potential prejudice to the defendant was minimized by the trial court's instruction to the jury advising it that it had no opinion regarding this case).

## CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and this action is dismissed. Since petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability is granted with respect to any of petitioner's claims. *See* 28 U.S.C. § 2253(c)(2); *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability), *abrogated on other grounds, United States v. Perez*, 129 F.3d 255, 259-60 (2d Cir. 1997).

SO ORDERED.

Dated: Brooklyn, New York
June 25, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge

15